# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | |
|---|---|
| **DR. NESAR U. AHMED, P. E.,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| ) | |
| v. ) | **Civil Action No.:** _____ |
| ) | |
| **THE BOARD OF TRUSTEES** ) | **JURY TRIAL DEMANDED** |
| **OF ALABAMA AGRICULTURAL** ) | |
| **& MECHANICAL UNIVERSITY,** ) | |
| ) | |
| Defendant. ) | |
| ) | |

## COMPLAINT

**COMES NOW** the Plaintiff, Dr. Nesar U. Ahmed, P.E., by and through his attorneys of record, and for his Complaint against the Defendant, The Board of Trustees of Alabama A & M University, states as follows:

## STATEMENT OF THE CASE

1. This is a lawsuit brought by the Plaintiff, Dr. Nesar U. Ahmed, P.E., who has been affected by the claims alleged below, seeking permanent relief from unlawful discriminatory practices involving promotion, compensation, and other terms and conditions of employment by failing to remedy systemic employment discrimination based on race and national origin. The actions of Defendant alleged herein violate

Title VII of the Civil Rights Act of 1964 on the basis of race and national origin discrimination, as well as 42 U.S.C. § 1981 ("§ 1981"), by and through 42 U.S.C. § 1983 ("§ 1983"), on the basis of race, national origin discrimination and retaliation.

## JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction over this cause of action pursuant to 28 U.S.C. §§ 1331 and 1343.

3. Plaintiff has fulfilled all conditions precedent to the institution of this action under Title VII. Plaintiff filed a charge of discrimination with the United States Equal Employment Opportunity Commission ("EEOC"), Charge Number 420-2013-01119, on February 28, 2013. [Attached hereto as Exhibit "A".] Plaintiff timely files this action within ninety (90) days of receipt of his Notice of Right to Sue from the Department of Justice, Civil Rights Division, dated May 21, 2014, but not received by Plaintiff until June 2, 2014. [Attached hereto as Exhibit "B".]

4. The Defendant is located and/or doing business within this judicial district and division, and this action is brought in the judicial district wherein the unlawful employment practices that form the basis of this Complaint were committed, making venue proper under 28 U.S.C. § 1391.

## PARTIES

5. Plaintiff, Dr. Nesar U. Ahmed, P.E. ("Ahmed" or "Plaintiff"), is an adult

male resident of the state of Alabama and this judicial district, and whose country of origin is Bangladesh. Ahmed was employed by the Defendant at all times material herein.

6. Defendant, the Board of Trustees of Alabama Agricultural and Mechanical University ("the University" or "Defendant"), is, upon information and belief, comprised of officials who are responsible for policy and governance of Alabama A & M University. At all times material herein, Defendant was the employer of Plaintiff within the meaning of Title VII and § 1981.

## STATEMENT OF FACTS

7. Plaintiff, Dr Nesar U. Ahmed, is a male whose country of origin is Bangladesh.

8. Plaintiff is a tenured Professor of Civil Engineering at Alabama A & M, where he has been employed since 1988. He earned his Ph.D. from Vanderbilt University in 1989.

9. Plaintiff suffered discrimination in compensation and was the subject of other harassment because of his race and national origin in his early years of employment with the University. As a result, he filed an EEOC Charge, No. 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 in 1999, and a civil rights lawsuit.

10. Plaintiff and the University reached a settlement of the 1999 EEOC

charge and resulting lawsuit, and Plaintiff withdrew that charge and dismissed that suit.

11. Since that time, despite the prevalence of upper level positions for which Plaintiff was qualified, the University has failed to offer Plaintiff any of those positions. Instead, Plaintiff has been kept in the same position for the last thirteen years despite his many accomplishments.

12. Among his achievements, Ahmed is a well recognized eminent scholar who has authored two books on the Fundamentals of Engineering Exam Review, as well as one book with a CD-ROM and an interactive exam. In addition, he has published many journal articles in the renowned journals of the American Society of Civil Engineering as well as the American Society of Mechanical Engineering, and he is a reviewer for highly reputed international journals.

13. Dr. Ahmed has been involved in more than 200 structural engineering design projects nationwide. He has received overwhelmingly excellent evaluations from his students; he has served on a multitude of University committees, and is a key person for the ABET and SACS accreditation program on behalf of the University. He is well recognized by his peers, having received several awards as well as public accolades from several high level university officials.

14. In June of 2009, Dr. Andrew Hugine, Jr., African-American, joined the

University as President.  Dr. Hugine was prolific in creating many new Program Coordinator positions, Director positions, Assistant Vice President positions as well as Associate Vice President and Vice President positions.  He never offered Plaintiff any of these positions and did not so much as offer him any temporary interim positions.

15. In 2012, the position of Dean of the School of Engineering became vacant.  The position was advertised and many candidates applied, including three internal candidates.  Dr. Ahmed was one of the three internal candidates that applied for the position.  One of the other two internal candidates included an Asian-American Professor who had served as Chairman of Civil Engineering for more than ten years and who, like Plai,ntiff had the title and rank of full Professor for more than twenty years, besides being a licensed Professional Engineer.  The other internal candidate was an African-American, Dr. Stephen U. Egarievwe, who was not even a Full Professor Engineering; he was an Associate Professor of Technology and his Ph.D. degree was not in engineering.

16. Of the three internal candidates, only Dr. Egarievwe, an African-American candidate with far less seniority and experience than Plaintiff, who had no writing or research background, and who came from non-engineering faculty, was selected for an interview.

17. Of all of the candidates, the University selected only three candidates for interview. All three of the candidates selected for interview were African-American. Clearly, the University gave preference to African-American candidates over better qualified applicants.

18. Defendant has a pattern and practice of giving preference to African-American candidates in selecting them for interview over better qualified individuals of different race or national origin.

19. Ultimately, the University announced the selection of Dr. Chance Glenn, African-American, on August 13, 2012, as Dean of the College of Engineering.

20. The selection of Dr. Egarievwe, an individual much less qualified than Plaintiff, for an interview was a violation of Plaintiff's rights under Title VII and § 1981 (via § 1983).

21. Among Dr. Ahmed's many services to the University has been his substantial involvement with the Masters' Program in Engineering. He was one of the founding faculty members of that program, having worked side by side with Dean V. Trent Montgomery, African-American, preparing all necessary documents in order for the University to receive state approval to open a new Masters' degree program in Engineering. Dr. Ahmed has also since served as Graduate Adviser for College of Engineering students.

22. On November 29, 2012, Dean Glenn announced that Dr. Michael Ayokanmbi, African-American, had been appointed to the position of Coordinator of Masters' Programs of Engineering.

23. The University did not advertise for candidates for the position of Coordinator of Masters' Programs of Engineering. Had the University advertised, Plaintiff would have applied for the position.

24. The individual selected for the position was far less qualified than Plaintiff.

25. Dr. Ayokambi did not have a background in engineering; he came instead from the Technology Department. He was not a full professor. His experience was limited to having served as an Associate Professor for only one year.

26. Plaintiff, by contrast had been a full Professor since 1996. He had been involved in establishing the Masters of Engineering Program. Plaintiff was a licensed Professional Engineer in 15 states, while Mr. Ayokambi was not a Professional Engineer. Plaintiff had through his research attained grants for the University totalling $5.9 million, while Ayokambi had attained no grants.

27. In June of 2012, Plaintiff received a job offer from Abu Dhabi University, Abu Dhabi, United Arab Emirates as a Professor of Civil Engineering. The offer

included a substantial pay increase from what Dr. Ahmed was receiving at the University, as well as better benefits.

28. When Plaintiff gave notice to the University regarding the offer, the University took steps to retain Plaintiff by offering him an additional two months of summer appointment, which provided him with additional 2/9 of the academic year salary, and the University also agreed to allow him to draw additional salary up to 33% of his academic year salary from externally funded projects. That offer and written confirmation of the offer, was provided to Plaintiff in writing on June 14, 2012. It was signed by V.Trent Montgomery, P.E., African-American, then Dean of the College of Engineering and approved by Dr. Daniel Wims, African-American, Provost & Vice President for Academic Affairs of the University.

29. In reliance upon that promise of additional compensation, Plaintiff gave up the offer at Abu Dhabi and continued working at the University.

30. In late 2012, Plaintiff was informed that the new Dean of Engineering, Dr. Chance Glenn, African-American, did not have the budget to support Dr. Ahmed's additional two month salary. In a meeting with Provost Wims, Dr. Glenn, and Plaintiff, however, Provost Wims confirmed that the University would continue to pay the additional salary. Dr. Ahmed then sent a confirmation email on October 25, 2012, confirming their prior agreement. Shortly thereafter, Dr. Ahmed turned down another

offer from Abu Dhabi University in reliance upon the University's representations regarding the agreement for the additional summer salary.

31. In late November of 2012, pursuant to the agreement for the University to provide him with supplemental pay, Plaintiff made request for supplemental pay for his work in organizing and conducting Fundamentals of Engineering two-hour review sessions for a PE license exam for Engineering Students. This was an activity that was beyond Plaintiff's normal full-time teaching load and other assignments.

32. The request was granted by the Budget Manager, Chairman and Dean of the College of Engineering. It was refused however, by Provost Wims. Provost Wims gave as his reason for the denial of the request for supplement that Plaintiff's teaching load was not adequate. The reason given was false and was a pretext for denying Plaintiff his entitlement to additional salary based on Plaintiff's race and national origin.

33. Plaintiff then sought to file a grievance on January 24, 2013. Provost Wims finally agreed to meet with Plaintiff on that date to discuss the potential grievance, after Plaintiff had been requesting to meet with him for more than two months. Provost Wims addressed Plaintiff in a very disrespectful manner in front of Dr. Glenn. Thereafter, the University continued to deny Plaintiff his supplemental pay.

34. On February 28, 2013, Plaintiff filed an EEOC Charge complaining of the failure to be interviewed for the Dean of Engineering position, the discriminatory hiring of Dr. Ayokambi, African-American, for the Coordinator of Masters of Engineering position, and the University's failure to pay him his supplemental pay in violation of their prior promise to him, and alleging discrimination on the basis of race and national origin, as well as retaliation for his prior EEOC charge.

35. On March 20, 2014, Dr. Ahmed received notice from the University that this coming summer (2014) would be the last summer that he would receive his summer salary. This action of significant reduction in Plaintiff's salary was in violation of the University's prior agreement to provide such additional salary for the rest of his career there.

36. Dean Glenn gave as the reason for the cessation of the summer salary that Plaintiff did not have a sufficient teaching load. That reason was false and constituted a pretext for race and national origin discrimination. Plaintiff's teaching load was in fact far in excess of University requirements for a full teaching load.

37. The salary reduction announced on March 20, 2014, was done in retaliation for Plaintiff's protected activity in having filed a charge with the EEOC.

38. On May 21, 2014, the EEOC issued its Notice of Right to Sue, which Plaintiff received on June 2, 2014.

## COUNT ONE
## TITLE VII – DISPARATE TREATMENT
## (RACE AND NATIONAL ORIGIN DISCRIMINATION)

39. Plaintiff adopts and re-alleges each and every allegation contained in this Complaint as if set out anew herein.

40. In taking the actions outlined in ¶¶ 7 - 37 herein, Defendant intentionally discriminated against Plaintiff on the basis of his race and national origin in violation of Title VII.  Asian and African-American employees were not treated similarly.

42. Defendant condones and allows race and national origin-based discrimination. Defendant's actions were in violation of Title VII, and were taken with malice or reckless indifference to the federally-protected rights of Plaintiff.

43. As a proximate consequence of the violation of Title VII by Defendant, Plaintiff has suffered and will continue to suffer damage to his professional life and future career opportunities, past and future pecuniary losses, embarrassment, emotional pain, inconvenience, mental anguish, and non-pecuniary damages.

44. Plaintiff has satisfied all administrative prerequisites to bringing this claim.

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff demands the following relief:

    a.    Placement in the position(s) in which he would have worked absent Defendant's discriminatory treatment; or, in lieu thereof, front pay;

    b.    Back pay;

    c.    Injunctive relief;

    d.    Pre-judgment interest;

    e.    Attorneys' fees;

    f.    Costs;

    g.    Compensatory damages for loss of wages, loss of benefits, mental anguish, embarrassment, emotional distress; and

    h.    Such other legal or equitable relief to which Plaintiff may be entitled.

## COUNT TWO
## TITLE VII - RETALIATION

45.    Plaintiff adopts and re-alleges each and every allegation contained in this Complaint as if set out anew herein.

46.    In taking the actions alleged in ¶¶ 7 - 37 herein, Defendant intentionally and willfully retaliated against Plaintiff in violation of his rights protected by Title VII, including his right to voice complaints of discrimination.

Said actions of Defendant were taken with malice or reckless indifference to the federally-protected and Constitutional rights of Plaintiff.

47. As a proximate consequence of the violations of Title VII by Defendant, Plaintiff has suffered and will continue to suffer damage to his professional life and future career opportunities, future pecuniary losses, emotional pain, inconvenience, mental anguish, loss of enjoyment of life, and non-pecuniary damages.

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff demands the following relief:

    a. The salary he would have achieved absent Defendant's discriminatory treatment; or, in the alternative, front pay;

    b. Back pay;

    c. All fringe benefits from the date of the retaliation;

    d. Injunctive relief;

    e. Pre-judgment interest;

    f. Attorneys' fees;

    g. Costs;

    h. Compensatory damages for loss of wages and loss of benefits, including, but not limited to, retirement and pension benefits,

              mental anguish, emotional distress, and embarrassment, both past and future; and

    i.    Such other legal or equitable relief, including injunctive relief, as may be appropriate to effectuate the purposes of Title VII, or to which he may be entitled.

## COUNT THREE
## RACE AND NATIONAL ORIGIN DISCRIMINATION
## 42 U.S.C. § 1981 via § 1983

48.    Plaintiff adopts and re-alleges each and every allegation contained in this Complaint as if set out anew herein.

49.    In failing to interview him for the position of the Dean of the College of Engineering and instead interviewing a less-qualified African-American candidate, and in failing to promote him to the position of Coordinator of Masters' Programs of Engineering, but instead hiring a far less qualified individual of African-American origin, Defendant intentionally and willfully discriminated against Plaintiff due to his race, Asian and his national origin, Bangladeshi, in violation of § 1981, via 42 U.S.C. § 1983. Said actions of Defendant were taken with malice or reckless indifference to the federally-protected rights of Plaintiff.

49.    As a proximate consequence of the violations of § 1981, via 42 U.S.C. § 1983, by Defendant, Plaintiff has suffered and will continue to suffer damage to his

professional life and future career opportunities, future pecuniary losses, emotional pain, inconvenience, mental anguish, loss of enjoyment of life, and non-pecuniary damages.

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff demands the following relief:

    a.    Placement in the position(s) in which he would have worked absent Defendant's discriminatory treatment; or, in the alternative, front pay;

    b.    All back pay and fringe benefits from the date of his non-promotions;

    c.    Pre-judgment interest;

    d.    Attorneys' fees;

    e.    Costs;

    f.    Injunctive relief;

    g.    Compensatory damages for loss of wages and loss of benefits, including, but not limited to, retirement and pension benefits, mental anguish, emotional distress, and embarrassment, both past and future; and

    h.    Such other legal or equitable relief, including injunctive relief, as

may be appropriate to effectuate the purposes of § 1981, via 42 U.S.C. § 1983, or to which he may be entitled.

### COUNT FOUR
### RETALIATION
### 42 U.S.C. § 1981 via § 1983

50. Plaintiff adopts and re-alleges each and every allegation contained in this Complaint as if set out anew herein.

51. In taking the actions alleged in ¶¶ 7 - 37 herein, Defendant intentionally and willfully retaliated against Plaintiff in violation of his rights protected by § 1981, including his right to voice complaints of discrimination. Said actions of Defendant were taken with malice or reckless indifference to the federally-protected and Constitutional rights of Plaintiff.

52. As a proximate consequence of the violations of § 1981, via 42 U.S.C. § 1983, by Defendant, Plaintiff has suffered and will continue to suffer damage to his professional life and future career opportunities, future pecuniary losses, emotional pain, inconvenience, mental anguish, loss of enjoyment of life, and non-pecuniary damages.

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff demands the following relief:

    a.    The salary he would have achieved defendant's discriminatory

        treatment; or, in the alternative, front pay;

b.     Back pay;

c.     All fringe benefits from the date of the retaliation;

d.     Pre-judgment interest;

e.     Attorneys' fees;

f.     Costs;

g.     Injunctive relief;

h.     Compensatory damages for loss of wages and loss of benefits, including, but not limited to, retirement and pension benefits, mental anguish, emotional distress, and embarrassment, both past and future; and

i.     Such other legal or equitable relief, including injunctive relief, as may be appropriate to effectuate the purposes of § 1981, via 42 U.S.C. § 1983, or to which he may be entitled.

**PLAINTIFF DEMANDS TRIAL BY STRUCK JURY ON ALL CLAIMS SO TRIABLE.**

                                                 **Respectfully submitted,**

/s/ Donna S. Cude
**John D. Saxon**
**Alabama Bar No. ASB-3258-071J**
**Donna S. Cude**
**Alabama Bar No. ASB-7680-W18A**
**Attorneys for Plaintiff**

**OF COUNSEL:**

**JOHN D. SAXON, P.C.**
**2119 3rd Avenue North**
**Birmingham, AL 35203**
**Tel:   (205) 324-0223**
**Fax:  (205) 323-1583**
**Email:     jsaxon@saxonattorneys.com**
**              dcude@saxonattorneys.com**

**PLAINTIFF'S ADDRESS**:

**Dr. Nesar U. Ahmed, P.E.**
**Hampton Cove, Alabama 35763**
**c/o John D. Saxon, P.C.**
**2119 Third Avenue North**
**Birmingham, AL 35203**

**PLEASE SERVE DEFENDANT BY**
**CERTIFIED MAIL RETURN RECEIPT REQUESTED:**

**THE BOARD OF TRUSTEES OF ALABAMA A & M UNIVERSITY**
**c/o Andrew Hugine, Jr.,  President**
**4900 Meridian Street North**
**Huntsville, AL 35810**