# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

|  |  |
|---|---|
| DR. NESAR U. AHMED, P.E., ) | |
| Plaintiff, ) | |
| v. ) | CASE NO: 5:14-cv-01683-JHE |
| THE BOARD OF TRUSTEES OF ) ALABAMA AGRICULTURAL ) & MECHANICAL UNIVERSITY, et al. ) | |
| Defendants. ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff Dr. Nesar U. Ahmed ("Ahmed") filed this action against, among others, Defendant Dr. V. Trent Montgomery ("Montgomery") in his individual capacity alleging a state-law claim of promissory fraud (Count VI). (Doc. 14). Montgomery moves to dismiss. (Doc. 26).[1] Ahmed opposes the motion to dismiss, (doc. 33), and moves to amend the complaint, (doc. 32). Montgomery opposes amendment on futility grounds, (doc. 36), but the motion for leave to amend is otherwise unopposed. The motions are fully briefed and ripe for review. (Docs. 27, 32, 33, 36, & 38). For the reasons stated more fully below, the undersigned recommends Ahmed's motion for leave to amend, (doc. 32), be **GRANTED IN PART** and **DENIED IN PART**, and Montgomery's motion to dismiss, (doc. 26), be **DENIED as MOOT**.

---

[1] Defendant Governor Robert Bentley has also moved to dismiss the claims against him. (doc. 22). However, after Ahmed's motion to amend the complaint was filed, Bentley did not oppose amendment. The second amended complaint, which the undersigned recommends allowing, would supersede the amended complaint to which Bentley's motion is addressed, and the undersigned **RECOMMENDS** his motion be **DENIED as MOOT** without prejudice to refiling the motion to address the second amended complaint.

1

**I. Standards of Review**

**A. Motion for Leave to Amend**

The court will "freely grant" a motion to amend "when justice so requires," Fed. R. Civ. P. 15(a)(2), and a district court should allow a plaintiff to amend unless there is a "substantial countervailing reason," *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1110 (11th Cir. 1996). Such "substantial countervailing reasons" include: undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and the futility of the amendment. *Id.* (citing *Nolin v. Douglas Cnty.*, 903 F.2d 1546, 1550 (11th Cir. 1990)).

"The futility threshold is akin to that for a motion to dismiss; thus, if the amended complaint could not survive Rule 12(b)(6) scrutiny, then the amendment is futile and leave to amend is properly denied." *B.D. Stephenson Trucking LLC v. Riverbrooke Capital Partners, LLC,* No. 06-0343-WS-M, 2006 WL 2772673, at *6 (S.D. Ala. Sept. 26, 2006) (citing *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1320 (11th Cir. 1999)); *accord Fla. Power & Light Co. v. Allis Chalmers Corp.*, 85 F.3d 1514, 1520 (11th Cir. 1996).

**B. Motion to Dismiss**

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain "a short and plain statement of the claim showing the pleader is entitled to relief." "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007)). Mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" are insufficient. *Iqbal*, 556 U.S. at 678. (citations and internal quotation marks omitted). "Nor does a

complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Id.* (citing *Twombly*, 550 U.S. at 557).

However, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  FED. R. CIV. P. 9(b).  "[A] plaintiff must plead facts as to time, place, and substance of the defendant's alleged fraud, specifically the details of the defendants' allegedly fraudulent acts, when they occurred, and who engaged in them."  *U.S. ex rel. Clausen v. Lab. Corp. of Am., Inc.*, 290 F.3d 1301, 1310 (11th Cir. 2002) (internal quotation marks omitted).  "Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  FED. R. CIV. P. 9(b).

Rule 12(b)(6), Fed. R. Civ. P., permits dismissal when a complaint fails to state a claim upon which relief can be granted.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Iqbal*, 556 U.S. at 678 (citations and internal quotation marks omitted).  A complaint states a facially plausible claim for relief "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citation omitted).  The complaint must establish "more than a sheer possibility that a defendant has acted unlawfully."  *Id.*; *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level.").  Ultimately, this inquiry is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Iqbal*, 556 U.S. at 679.

The court accepts all factual allegations as true on a motion to dismiss under Rule 12(b)(6).  *See, e.g., Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000).  However, legal conclusions unsupported by factual allegations are not entitled to that assumption

3

of truth. *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1950.

## II. Procedural and Factual Background[2]

Montgomery is the former Dean of the College of Engineering (and predecessor of Defendant Chance Glenn) at Alabama A&M University ("the University"). (Doc. 32-1 at 5). Ahmed is a tenured Professor of Civil Engineering at the University, where he began working in 1988. (*Id*. at 4).

In June of 2012, Ahmed received an offer to teach in Abu Dhabi. (*Id*. at 8). The offer included a substantial increase in pay. (*Id*.). The University took steps to retain Ahmed. (*Id*.). The University offered Ahmed an additional two months of summer appointment, which provided him with an additional two-ninths of the academic year salary, and agreed to allow him to draw additional salary up to 33% of his academic salary from externally funded projects. (*Id.* at 8-9). The offer was confirmed in writing on June 14, 2012, signed by Montgomery and approved by Defendant Daniel Wims, Provost and Vice-President for Academic Affairs. (*Id.* at 9). Ahmed declined the offer in Abu Dhabi and continued working at the University. (*Id.*). In late 2012, Ahmed was informed the new dean did not have the budget to support his additional two-month salary, but Wims confirmed the University would continue paying it. (*Id.* at 9). On October 25, 2012, Ahmed sent an email confirming the prior agreement, and shortly thereafter turned down a second offer from Abu Dhabi University. (*Id.*)

---

[2] "When considering a motion to dismiss, all facts set forth in the plaintiff's complaint 'are to be accepted as true and the court limits its consideration to the pleadings and exhibits attached thereto.'" *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000) (quoting *GSW, Inc. v. Long Cnty.*, 999 F.2d 1508, 1510 (11th Cir. 1993)). In other words, the "facts" are taken directly from the complaint. Because this is before the Court on a motion for leave to amend, the relevant facts are taken from the proposed second amended complaint. (*See* docs. 32 & 32-1).

On December 1, 2012, Ahmed formally requested supplemental pay in the amount of $13,393.55, as authorized by the terms of the NSF grant under which he was working and by his prior agreement with the University.  (*Id.* at 9-10).   The request was approved in writing by the Budget Manager, Department Chairman, and Dean of the College of Engineering.   (*Id.* at 10).  On December 13, 2012, Provost Wims refused the request, stating Ahmed's teaching load was not adequate.  (*Id.*).   After speaking with the dean who advised him to resubmit the request, Ahmed submitted another form, which was approved in writing by the Budget Manager, the Department Chair, the Dean of the College of Engineering, and by Provost Wims.  (*Id.*).  Human Resources also approved the request and placed it in the queue for distribution from the grant, but, on January 18, 2013, the request was removed from payroll at the direction of Provost Wim's office.  (*Id.*).   Shortly thereafter, Ahmed was advised of the retraction of Wim's approval.  (*Id.*).

On March 20, 2014, Ahmed received notice that the upcoming summer would be the last that he received his summer salary.  (*Id.*).   Glenn stated that the University was ending Ahmed's summer appointment because Ahmed's teaching load was not sufficient.  (*Id.*).  However, Ahmed's teaching load was in excess of the University's requirements for a full teaching load.   (*Id.* at 10-11).

Ahmed filed this action on August 29, 2014, asserting claims against the Board of Trustees of Alabama A&M University.  (Doc. 1).   On December 10, 2014, Ahmed amended his complaint to add the University itself; the trustees of the Board, in their individual and official capacities; Drs. Andrew Hugine, Wims, and Glenn, in their individual and official capacities; and Montgomery, in his individual capacity.   (Doc. 14).

### III. Analysis

Due to the liberal allowance for amendment under Rule 15 and the fact the motion for leave is substantially unopposed, it is due to be granted to the extent Montgomery does not successfully oppose it, (doc. 36). Montgomery's original motion to dismiss stated four grounds for dismissal: (1) Ahmed fails to state a viable promissory fraud claim against Montgomery, (2) Ahmed fails to plead his promissory fraud claim with specificity, (3) his claim is barred by the applicable statute of limitations, and (4) his claim is barred by state-agent immunity. (Doc. 27 at 2). After the motion for leave to amend, Montgomery concedes Ahmed has pled away any facial insufficiency regarding the statute of limitations but argues Ahmed still fails to state a viable promissory fraud claim against Montgomery. (Doc. 36).[3] Specifically, Montgomery contends Ahmed fails to state either a promissory fraud independent from the alleged breach of contract so as to state a claim under Alabama law, or that Montgomery had the requisite intent for promissory fraud and caused the injury of which Ahmed complains. (*Id.* at 3 n.4 & 6-10).

Under Alabama law, the elements of fraud are

> (1) a false representation (2) of a material existing fact (3) relied upon by the plaintiff (4) who was damaged as a proximate result of the misrepresentation. If fraud is based upon a promise to perform or abstain from performing in the future, two additional elements must be proved: (1) the defendant's intention, at the time of the alleged misrepresentation, not to do the act promised, coupled with (2) an intent to deceive.

---

[3] In a footnote, Montgomery contends the proposed second amended complaint does not add any facts to show he is not protected by State-agent immunity. (Doc. 36 at 3 n.3). In Alabama, however, State-agent immunity "does not provide immunity from liability for the commission of an intentional tort, but only for negligence in the exercise of judgment." *Hollis v. City of Brighton*, 950 So. 2d 300, 305 (Ala. 2006) (comparing it to the similar intentional-tort exception to statutory peace-officer immunity). Because promissory fraud requires an intent to defraud and therefore cannot be based on negligence, stating a promissory fraud claim, by definition, states an exception to State-agent immunity. *See Byrd v. Lamar*, 846 So. 2d 334 (Ala. 2002) (holding acts of promissory fraud, which require proof that the defendants intended not to perform promised acts, were not protected by state-agent immunity).

*Robinson v. Sovran Acquisition Ltd. P'ship*, 70 So. 3d 390, 396 (Ala. Ct. Civ. App. 2011) (quoting *Coastal Concrete Co. v. Patterson*, 503 So. 2d 824, 826 (Ala. 1987)) (internal citations omitted).  When dealing with fraud claims arising out of breaches of contract, the two additional promissory-fraud elements are required, and "[f]ailure to perform alone is not sufficient evidence to show a present intent not to perform" because, "[i]f it were, then every breach of contract would be tantamount to fraud."  *Heisz v. Galt Indus., Inc.*, 93 So. 3d 918, 925 (Ala. 2012).

**A.  Independent Fraudulent Promises**

Montgomery contends Ahmed cannot bring a claim for fraud, in which the alleged misrepresentations are the exact same promises as those in the contract allegedly breached. (Doc. 27 at 7-8; doc. 36 at 7) (citing *Dickinson v. Land Developers Const. Co.*, 882 So. 2d 291, 303-05 (Ala. 2003) (Houston, J. concurring specially)).  However, the Alabama Supreme Court has, since *Dickinson*, addressed a promissory-fraud claim on the merits that it explicitly acknowledged was based only on alleged misrepresentations "in the asset-purchase agreement itself, which was signed by [the defendant]."  *Heisz*, 93 So. 3d at 925.  *See also McAdory v. Jones*, 71 So. 2d 526, 528 (Ala. 1954) ("When fraud is the basis upon which relief is sought against a contract and the fraud is dependent upon a breach of the covenant by the other party to the contract, it is usually necessary to allege and prove that at the time the contract was made the covenantor had no intention of complying with his obligation, but that he entered into it at that time with the intention of defrauding the other party to the contract.").  Moreover, if the promises in a contract could never constitute promissory fraud, there would be no need for the Alabama Supreme Court to consistently intone that, to prevent every breach of contract from being a fraud, simple breach is not sufficient evidence to satisfy the present-intent-not-to-perform requirement.

7

*See Heisz*, 93 So. 3d at 925; *Gadsden Paper & Supply Co. v. Washburn*, 554 So. 2d 983, 987 (Ala. 1989); *Old S. Life Ins. Co. v. Woodall*, 326 So. 2d 726, 729 (Ala. 1976). From all indications, the intent not to perform a contract when the contractual promises are made can constitute promissory fraud under Alabama law.

**B. Causation**

Montgomery also contends Ahmed fails to allege facts showing he proximately caused Ahmed's damages, asserting Ahmed does not allege Montgomery was involved in the denial of his supplemental pay. (Doc. 36 at 9-10). Ahmed's proposed second amended complaint does not allege Montgomery directly caused the damage but instead alleges that, after Glenn replaced Montgomery as the dean, "[t]he wrongful conduct on behalf of the Defendants Wims, Hugine and Glenn in depriving him of his salary, combined and concurred to proximately cause [Ahmed] to suffer financial loss, economic hardship and mental pain and anguish," (doc. 32-1 at 22). Ahmed does not directly address Montgomery's argument that this is insufficient, (*see* doc. 38), but his earlier brief in opposition to Montgomery's motion to dismiss makes clear he does not believe Alabama law requires Montgomery cause the damage directly as long as the damage resulted from Ahmed's detrimental reliance on Montgomery's intentional misrepresentation, (doc. 33 at 4).

The language of the elements of fraud support Ahmed's contention, requiring only that the plaintiff be "damaged as a proximate result of the misrepresentation." *Robinson*, 70 So. 3d at 396. This is consistent with the Alabama Supreme Court's holdings regarding proximate causation in cases of intentional fraud:

> in cases of intentional or aggravated acts there is an extended liability and the rules of proximate causation are more liberally applied than would be justified in negligence cases. This is especially true in cases of fraud where proximate cause

> is often articulated as a requirement of reasonable reliance where but for the misrepresentation or concealment it is likely the plaintiff would not have acted in the transaction in question. In those instances where the defendant is found to have acted intentionally it is proper that a more remote causation result in liability than would be true in negligence cases. The policy to be followed is that liability should fall on the wrongdoer rather than to permit the victim to go uncompensated.

*Shades Ridge Holding Co. v. Cobbs, Allen & Hall Mortgage Co.*, 390 So. 2d 601, 607 (Ala. 1980).

Quoting Harper and James's The Law of Torts, the *Shades Ridge* court went on to state:

> The problem of legal or proximate causation is of little difficulty in view of the general rule that all intended consequences are proximate. Whether the defendant's misconduct has in fact caused plaintiff any damage at all, however, is frequently presented as a problem of 'reliance' on the part of the plaintiff upon the misrepresentation. . . . To determine whether or not a misrepresentation was actually relied upon, whether it was a cause in fact of the damage, the sine qua non [or "but-for"] rule is often applied. If the plaintiff would not have acted on the transaction in question but for the misrepresentation, such misrepresentation was an actual cause of his loss.

*Id.* at 610-11. Lastly, the court notes causation is divided into two prongs: (1) "actual," which in the case of intentional fraud amounts to reliance (as noted above), and "proximity," which is "the limitation which the courts have placed upon the actor's responsibility for the consequences of his conduct" (i.e., in the interests of "public policy, justice, and fairness"). *Id.* at 611. On the latter prong, the court states:

> In the case of liability for intended or aggravated acts, . . . [f]oreseeability, as such, is not the test [as it is for negligence]. If, weighing the moral fault of a defendant and applying the rules of causation liberally, the consequences have some reasonably close connection with defendant's conduct and the harm threatened, and in themselves, using hindsight, are not deemed preposterous or far-fetched, defendant should be held liable.

*Id.* at 611-12.

Assuming for purposes of the causation analysis that Montgomery and Wims did not intend to perform the contract with Ahmed and instead intended to deceive him into staying at the University, the misrepresentation is certainly the actual cause of the harm because the harm

would not have occurred without it: Ahmed alleges facts to support his reliance on the representations of supplemental pay when choosing to remain at the University instead of taking the job in Abu Dhabi. (Doc. 32-1 at 8-9). As for proximity, the harm caused was certainly not far-fetched in light of the alleged intentional conduct: Montgomery and Wims allegedly made the offer without the intent of following through on it and, even though Montgomery was not there to complete the scheme, it came to fruition exactly as it is alleged to have been intended.

Therefore, Ahmed has alleged sufficient facts to support proximate causation for an intentional tort if he alleges sufficient facts to establish the intent elements of the claim.

## C. Intent

Montgomery, however, also contends Ahmed fails to sufficiently allege Montgomery possessed an intent to deceive Ahmed and lacked the intent to perform the act promised. (Doc. 36 at 3 n.4). Although "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally," FED. R. CIV. P. 9(b), this does not mean it is sufficient to make only conclusory allegations of intent. *See Iqbal,* 556 U.S. at 681 ("[F]ormulaic recitation of the elements of a . . . claim . . . are conclusory and not entitled to be assumed true." (internal citations and quotation marks omitted)); *id.* at 678 ("To survive a motion to dismiss, a complaint must contain . . . factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."); *U.S., ex rel. Pilecki–Simko v. Chubb Inst.,* 443 F. App'x 754, 760-61 (3d Cir. 2011) (holding conclusory allegations defendant "knew" or "knowingly" acted was insufficient to support a claim); *Kuklachev v. Gelfman*, 600 F. Supp. 2d 437, 456 (E.D.N.Y. 2009) (holding that, "to avoid abuse," a complaint must allege facts from which the court can infer fraudulent intent) (quoting *Campaniello Imports, Ltd. v. Saporiti Italia S.p.A.*, 117 F.3d 655, 663 (2d Cir. 1997)) (internal quotation marks and citations omitted);

*Lawrence Holdings, Inc. v. ASA Int'l, LTD.*, No. 8:14-CV-1862-T-33EAJ, 2014 WL 5502464, at *12 (M.D. Fla. Oct. 30, 2014) (holding a plaintiff must allege facts to support an inference of fraudulent intent).[4]

The only factual allegation about Montgomery is that he "ratified and confirmed" the alleged false statements by signing the "written confirmation of the offer." (Doc. 32-1 at 9 & 21). All subsequent allegations involving Montgomery are conclusory allegations he "intended to cause, or negligently, inadvertently, or mistakenly caused, [Ahmed] to rely on fraudulent material representations," and the misrepresentations were "known to . . . Montgomery . . . to be false, or were made wantonly, recklessly, heedlessly, or negligently, without regard to the truth or falsity of the representations, or were made mistakenly with the intention that [Ahmed] rely on them." (*Id.* at 21). These are merely formulaic recitations of the elements of fraud (not even of promissory fraud, specifically, which requires intent to defraud and cannot be done recklessly or negligently).

Although failure to perform may be considered together with other circumstantial evidence on the questions of present intent to perform and intent to deceive, *Byrd*, 846 So. 2d at 343, it cannot serve that purpose here because Ahmed's own allegations show Montgomery was not involved with the decision not to perform so, even if taken as true, Wims and Glenn's decisions not to perform the earlier promises would not support the reasonable inference Montgomery had never intended to perform them.

---

[4] Supplemental state-law claims are subject to federal pleading requirements. *See Liva v. Mendolia*, No. 9:13-CV-81047-KAM, 2014 WL 2118814, at *2 (S.D. Fla. May 21, 2014) (citing *Lundgren v. McDaniel*, 814 F.2d 600, 605 (11th Cir. 1987)). This also applies to state-law fraud claims and the heightened pleading standard of Federal Rule 9(b). *See U.S. ex rel. Keeler v. Eisai, Inc.*, 568 F. App'x 783, 803 (11th Cir. 2014) (citing *United States ex rel. Rost v. Pfizer, Inc.,* 507 F.3d 720, 723, 731 (1st Cir. 2007)).

Ahmed must, at least, allege some facts that, taken as true, could lead to the reasonable inference, Montgomery intended, at the time he signed the written confirmation, to deceive Ahmed and not to fulfill the promise he was ratifying. Ahmed has not done so, leaving his allegations of promissory fraud against Montgomery conclusory and speculative. As a result, Ahmed's motion for leave to amend is due to be **DENIED** to the extent it seeks to include the count for promissory fraud against Montgomery.

## IV. Recommendation

Based on the foregoing, it is **RECOMMENDED** Ahmed's motion for leave to amend, (doc. 32), be **GRANTED IN PART** and **DENIED IN PART**. Specifically, Ahmed should be allowed to file the proposed second amended complaint except as it relates to the count against Montgomery, which should not be allowed as currently stated but should be denied without prejudice to a further motion to amend that claim to state a sufficient cause of action. It is **FURTHER RECOMMENDED** Montgomery's and Bentley's motions to dismiss, (doc. 22 & 26), be **DENIED as MOOT**.

## V. Notice of Right to Object

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b)(2), Fed. R. Civ. P., any party may file specific written objections to this report and recommendation within fourteen (14) days from the date it is filed in the office of the Clerk. Failure to file written objections to the proposed findings and recommendations contained in this report and recommendation within fourteen (14) days from the date it is filed shall bar an aggrieved party from attacking the factual findings on appeal. Written objections shall specifically identify the portions of the proposed findings and recommendation to which objection is made and the specific basis for objection. A copy of the

objections must be served upon all other parties to the action. If objections are filed, the opposing party has ten (10) additional days to file a response to the objections.

DONE this 13th day of July 2015.

_____
**JOHN H. ENGLAND, III**
UNITED STATES MAGISTRATE JUDGE