FILED
2017 Oct-10 AM 10:02
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### NORTHEASTERN DIVISION

| | |
|---|---|
| DR. NESAR U. AHMED, P.E.,, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> THE BOARD OF TRUSTEES OF ) <br> ALABAMA AGRICULTURAL & ) <br> MECHANICAL UNIVERSITY, et al., ) <br> ) <br> Defendants. ) | Case No.: 5:14-cv-01683-JHE |

## MEMORANDUM OPINION AND ORDER[1]

On April 7, 2017, Defendants Andrew Hugine, Jr., Daniel K. Wims, and Chance Glenn (the "University Officials") filed a partial motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) and a brief in support. (Docs. 75 & 76). The same day, the Board of Trustees for Alabama Agricultural and Mechanical University (the "Board") filed its own partial motion to dismiss, also under Rule 12(b)(6), accompanied by a supporting brief. (Docs. 77 & 78). Ahmed opposed each, (docs. 85 & 86), and both the University Officials, (doc. 87), and the Board, (doc. 88), filed reply briefs. The motions are fully briefed and ripe for review. For the reasons stated more fully below, the motions are **GRANTED**.

### I. Standard of Review

Rule 12(b)(6), FED. R. CIV. P., permits dismissal when a complaint fails to state a claim upon which relief can be granted. "To survive a motion to dismiss, a complaint must contain

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties have voluntarily consented to have a United States Magistrate Judge conduct any and all proceedings, including trial and the entry of final judgment. (Doc. 54).

sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations and internal quotation marks omitted). A complaint states a facially plausible claim for relief "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). The complaint must establish "more than a sheer possibility that a defendant has acted unlawfully." *Id.; accord Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007) ("Factual allegations must be enough to raise a right to relief above the speculative level."). Ultimately, this inquiry is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

To that end, under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain "a short and plain statement of the claim showing the pleader is entitled to relief." "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" are insufficient. *Iqbal*, 556 U.S. at 678. (citations and internal quotation marks omitted). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (citing *Bell Atl. Corp.*, 550 U.S. at 557).

## II. Factual and Procedural History[2]

Ahmed alleges the University Defendants discriminated against him on the basis of his race, ancestry, ethnicity, and national origin in violation of 42 U.S.C. § 1981 (through § 1983).

---

[2] "When considering a motion to dismiss, all facts set forth in the plaintiff's complaint 'are to be accepted as true and the court limits its consideration to the pleadings and exhibits attached thereto.'" *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000) (quoting *GSW,*

2

Hugine, as University President, created new high-level positions and did not offer Ahmed any of the positions despite his achievements. (Doc. 68, ¶¶ 12-14). Instead, the University gave preference to African-American candidates over better-qualified applicants such as Ahmed. (Doc. 68, ¶ 19). Ahmed also claims that Glenn discriminated against him when he selected an African-American for a non-advertised position as Coordinator of Masters Programs of Engineering despite Ahmed's experience and his many services in establishing the program. (Doc. 68, ¶¶ 22-24).

Ahmed received multiple job offers from Abu Dhabi University in the United Arab Emirates. (Doc. 68, ¶¶ 28, 31). The University persuaded him not to take the offer by offering him two additional months of summer employment to provide him with additional 2/9 of his salary and allowing him to draw up to an additional 33% of his salary from externally funded projects. (Doc. 68, ¶ 29). Ahmed submitted a form for supplemental pay pursuant to the agreement and Wims, as Provost, denied the request multiple times. (Doc. 68, ¶¶ 34, 37). At least one denial was allegedly a pretext for denying Ahmed pay based on his race and national origin. (Doc. 68, ¶. 34). After the denials, Ahmed met with Wims and Glenn in February 2013, and Wims disrespected Ahmed in front of Glenn. (Doc. 68, ¶ 38).

The University continued to deny Ahmed pay, and later notified him that he would no longer be receiving his summer salary after the upcoming summer of 2014 due to an allegedly insufficient teaching load. (Doc. 68, ¶ 40). Ahmed claims the retraction of his summer salary was in retaliation for an EEOC charge he filed on February 28, 2013, complaining of

---

*Inc. v. Long Cnty.*, 999 F.2d 1508, 1510 (11th Cir. 1993)). In other words, the "facts" are taken directly from the third amended complaint.

3

discrimination and denial of pay. (Doc. 68, ¶¶ 39, 42, 62-64). Ahmed also contends the Board breached its contract with him when it denied him pay and terminated his agreed-upon summer salary. (Doc. 68, ¶¶ 66-69).

Ahmed has amended his complaint several times, most recently after the undersigned granted his motion for leave to amend, (doc. 49). (Doc. 67). The operative pleading is Ahmed's third amended complaint. (Doc. 68). The University Officials move to dismiss Ahmed's official capacity claims against them in Count Six of that complaint (which alleges promissory fraud) and his official capacity claims for monetary damages in Counts Three and Four of his Third Amended Complaint (which allege race/ethnicity/ancestry discrimination and retaliation, respectively) on the basis of Eleventh Amendment immunity and sovereign immunity under the Alabama Constitution. (Doc. 75 at 2). Additionally, the Board moves to dismiss Ahmed's breach of contract claim on the basis of sovereign immunity. (Doc. 77 at 2).

### III. Analysis

**A. The Alabama Constitution prohibits Ahmed's breach of contract claim against the Board.**

The Board asserts Ahmed's breach of contract claim is defeated by its sovereign immunity. (Doc. 78 at 2). Under the Alabama Constitution, "the State of Alabama shall never be made a defendant in any court of law or equity." ALA. CONST. of 1901, art. I, § 14. The Board, which is an instrumentality of the State of Alabama, is entitled to this absolute immunity from suit. *Alabama A&M Univ. v. Jones*, 895 So. 2d 867, 873 (Ala. 2004) (citations omitted). This wall of immunity is nearly impregnable. *Id.* at 872-874.

The Alabama Supreme Court has held that there are six types of actions to which sovereign immunity does not apply:

> (1) actions brought to compel State officials to perform their legal duties; (2) actions brought to enjoin State officials from enforcing an unconstitutional law; (3) actions to compel State officials to perform ministerial acts; (4) actions brought under the Declaratory Judgments Act, Ala. Code 1975, § 6-6-220 et seq., seeking construction of a statute and how it should be applied in a given situation; (5) valid inverse actions brought against State officials in their representative capacity; and (6) actions for injunction or damages brought against State officials in their representative capacity and individually here it was alleged that they had acted in bad faith, beyond their authority, or in a mistaken interpretation of the law.

*Alabama State University v. Danley*, 212 So. 3d 112, 123 (Ala. 2016) (internal quotation marks and citation omitted). While occasionally called "exceptions," these are, more aptly, simply categories of claims that are not considered to be actions against the state for the purposes of § 14. *Id.* (citation omitted). "An action *is* one against the [S]tate when a favorable result for the plaintiff would directly affect a *contract* or *property* right of the State, or would result in the plaintiff's recovery of money from the [S]tate." *Jones*, 895 So. 2d at 873 (citation omitted, emphasis in original).

Ahmed's breach of contract claim, if successful, seeks to vindicate a contract right he asserts against the Board (and thus the State of Alabama) and would result in his recovery of money from the state. (*See* doc. 68 at 25 (requesting, *inter alia*, back pay and interest)). Therefore, it is facially an action against the state, and is defeated by the state's immunity unless some exception (or "exception") to § 14 applies. *See Danley*, 212 So. 3d at 125 (analyzing back pay claim under § 14). Ahmed asserts that his breach of contract claim falls into either the first or third category of claims not barred by sovereign immunity and is either an action to compel the Board to perform a legal duty or an action to compel the Board to perform a ministerial act. (Doc. 86 at 3, 8). The undersigned need not analyze Ahmed's attempts to make his claims fit into one of the "exceptions" to state immunity, however, as they are inapplicable to actions against a state agency such as the Board; they apply only to actions brought against state officials, not state agencies. *Ex parte Wilcox*

*Cty. Bd. of Educ.*, 218 So. 3d 774, 778 (Ala. 2016). Ahmed's breach of contract claim is brought solely against the Board itself, not against an official who could be compelled to perform a legal duty or perform a ministerial act.

Several of the cases Ahmed cites in his response undermine his contention he can maintain a breach of contract action against the Board. Ahmed offers *Ex parte Bessemer Bd. of Educ.*, 68 So. 3d 782 (Ala. 2011), to illustrate that "the case was permitted to proceed" because the plaintiff sought "a sum certain [that could be] easily ascertained," which he argues is also the case here. (Doc. 85 at 4-5). However, in that case, the court determined the analogous defendants to the Board—the Bessemer Board of Education and the Alabama State Department of Education—were "clearly entitled to absolute immunity" as arms or agents of the state. *Ex parte Bessemer Bd. of Educ.*, 68 So. 3d at 791. Rather, the case proceeded against the Board *members* in their official capacities. *See id.* at 790-91 ("Therefore, Minor's action *against the Bessemer Board members in their official capacities* is not an action 'against the State' for § 14 purposes; thus, the Bessemer Board members are not entitled to § 14 immunity from Minor's action to compel them to fulfill their statutory duty to pay her the appropriate salary increase.") (emphasis added). And in *Danley*, the court noted that the plaintiff "concedes that § 14 provides ASU with absolute immunity from state-law claims for monetary damages" before proceeding to its analysis of whether the state-law claims against ASU *officials* could satisfy one of the six "exceptions." *Danley*, 212 So. 3d at 124.

The only case Ahmed cites that supports his position is *Marous Bros. Construction v. Alabama State University*, 553 F. Supp. 2d 1199 (M.D. Ala. 2008). In *Marous Bros.*, the plaintiffs, a construction company and a developer, performed work on behalf of Alabama State University ("ASU"), which the university accepted and did not pay for. *Id.* at 1200-01. The plaintiffs sued for breach of contract, and the university moved to dismiss, asserting immunity under § 14. *Id.* at

1201. Relying on *State Highway Department v. Milton Constr. Co.*, 586 So.2d 872 (Ala. 1991) for the proposition "[o]ne of [the categories of actions not prohibited by § 14] is 'actions brought to force state employees or agencies to perform their legal duties,'" the court concluded ASU was potentially not entitled to sovereign immunity and denied its motion to dismiss. *Id.* at 1201-02.

The Alabama Supreme Court, while not specifically rejecting the holding of *Marous Bros.*, has never applied an "exception" to § 14 to a state agency. The only case in which it has cited *Marous Bros.* is *Danley*, in which the court described *Marous Bros.* as standing for the proposition "once the State has contracted for services *and has accepted those services*, it is legally obligated to pay for those services, and a claim seeking to enforce that legal obligation falls within the parameters of the first 'exception' to § 14 immunity." *Danley,* 212 So. 3d at 127 (emphasis in original). However, its discussion of *Marous Bros.* only occurred in the context of analyzing claims against state *officials*; as noted above, the plaintiff had already conceded absolute immunity for the defendant university under § 14. *See id.* at 124. And the Alabama Supreme Court has made it clear that the language from *Milton Construction* on which the *Marous Bros.* court relied— which, unlike most formulations of the third "exception," includes the words "or agencies"—does not reflect the law to the extent it suggests a breach of contract suit against a state agency is permissible:

> In *Milton I* and *Milton II,* the plaintiff had named the director of the Highway Department, in his official capacity, as a party to the action, along with the Highway Department. *Milton I* and *Milton II* thus do not support Good Hope's claim that it has a right to sue a State agency in the agency's own right on a breach-of-contract theory, *and we disavow any contrary implication of the language of those opinions*. As we noted above, a State agency is absolutely immune from suit.

*Ex parte Alabama Dep't of Transp.*, 978 So. 2d 17, 23 (Ala. 2007) (emphasis added). Faced with consistent opposition to the principle Ahmed cites *Marous Bros.* for and an explicit rejection of

7

the language on which that principle is based, the undersigned cannot conclude *Marous Bros.* accurately states Alabama law insofar as applies an "exception" to § 14 immunity to a state agency.

Because § 14 forecloses Ahmed's breach of contract claim against the Board, Count Five of Ahmed's complaint is due to be dismissed.

**B. Ahmed's claims for front pay and retrospective relief against the University Officials in their official capacities in Counts Three and Four are barred by the Eleventh Amendment.**

The University Officials base their request for dismissal of Ahmed's claims for front pay and retrospective relief in Counts Three and Four on Eleventh Amendment immunity, which they say bars Ahmed's claims for monetary damages and retrospective relief against them in their official capacities. (Doc. 75 at 2). In Count Three, a § 1981 race/ethnicity/national origin discrimination claim brought via § 1983, Ahmed seeks, *inter alia*, "Injunctive relief, i.e., placement in the position(s) in which he would have worked absent said discriminatory treatment or in the alternative front pay," (doc. 68 at 21), while in Count Four, which alleges retaliation, Ahmed seeks "the salary he would achieve absent said Defendants' retaliatory treatment" and "interest," (doc. 68 at 23).

In general, the Eleventh Amendment bars actions in federal court against a state, which includes actions brought against state officials sued in their official capacity. *Kentucky v. Graham*, 473 U.S. 159, 169 (1985) (citations omitted). An exception to this general rule, established in *Ex parte Young*, 209 U.S. 123, 28 S. Ct. 441, 52 L. Ed. 714 (1908), permits official-capacity suits against state officials when the plaintiff seeks "*prospective* equitable relief to end *continuing* violations of federal law." *Lane v. Cent. Alabama Cmty. Coll.*, 772 F.3d 1349, 1351 (11th Cir. 2014) (emphasis in original; citation omitted). However, "if the prospective relief sought is 'measured in terms of a monetary loss resulting from a past breach of a legal duty,' it is the

8

functional equivalent of money damages and *Ex parte Young* does not apply." *Florida Ass'n of Rehabilitation Facilities, Inc. v. State of Fla. Dept. of Health and Rehabilitative Services*, 225 F.3d 1208, 1220 (11th Cir. 2000) (quoting *Edelman v. Jordan*, 415 U.S. 651, 669 (1974)).

The A&M Officials do not dispute reinstatement would be permissible in either context. However, they argue the alternative request for front pay in Count Three and the request for "the salary he would achieve absent retaliatory treatment" and interest in Count Four are categorically different, as they request money damages flowing from the breach of past duties. (Doc. 76 at 5). Ahmed's response to this is to argue (1) whether front pay in lieu of reinstatement falls into the *Ex parte Young* exception has not been specifically addressed by the Eleventh Circuit; (2) the salary and interest relief sought in Count Four was, at the inception of the case, prospective, but is now "more retroactive than it was two and a half years ago" (and thus, he acknowledges, foreclosed against the A&M Officials in their official capacities); and (3) in either case, reinstatement is a permissible prospective remedy, and Ahmed's salary pursuant to his reinstatement does not implicate the Eleventh Amendment. (Doc. at 3-6).

The parties' arguments seem to conceal the fact they actually agree, in large part, as to the correct result, while disputing whether the complaint actually supports that result. Ahmed concedes salary and interest are not appropriate retrospective remedies for his retaliation claim,[3] and neither party contends Ahmed would not receive a salary were he reinstated. Therefore,

---

[3] Ahmed states "interest" is still properly a part of his relief to the extent it constitutes "interest that is not paid in the future" for future summer appointments, which would be the subject of injunctive relief. (Doc. 86 at 5). This is indecipherable unless it means Ahmed wishes an injunction to contemplate that the official capacity defendants will *not* pay him (and thus that they must be required to pay interest if they do not timely pay), in which case it would be speculative to address it now.

9

Ahmed's claims for salary and interest against the official-capacity University Defendants in Count Four not associated with his reinstatement (insofar as his complaint can be read to support such claims) are due to be dismissed as barred by the Eleventh Amendment.

The one issue on which the parties are certainly at odds is front pay in lieu of reinstatement. Ahmed's argument is solely that this Court may consider it a potential remedy until the Eleventh Circuit forecloses the possibility. (Doc. 86 at 3-4). However, even in the case he cites for the proposition the Eleventh Circuit has not addressed whether front pay in lieu of reinstatement is available, the court found such claims to be barred by the Eleventh Amendment. *See Williams v. Dewey*, No. 7:15-CV-172 (WLS), 2016 WL 890575, at *2 (M.D. Ga. Mar. 8, 2016). Ahmed points to no case in which a court found front pay *not* barred; conversely, Defendants provide ample (albeit nonbinding) authority supporting their position. *See Jones v. Texas Juvenile Justice Dept.*, 646 Fed. Appx. 374, 376 (5th Cir. 2016); *Shibeshi v. City Univ. of N.Y.*, 531 Fed. Appx. 135 (2nd Cir. 2013); *Blanciak v. Allegheny Ludlum Corp.*, 77 F. 3d 690, 698 (3rd Cir. 1996); *Campbell v. Ark. Dept. of Correction*, 155 F.3d 950, 962 (8th Cir. 1998); *Leeds v. Sexson*, Case No. 92-35231, 1993 WL 285896, at *3 n.3 (9th Cir. July 29, 1993); *Freeman v. Mich. Dept. of State*, 808 F. 2d 1174, 1179 (6th Cir. 1987); *Kicklighter v. Goodrich*, Case No. CV-214-088, 2016 WL 3190660 at *3 (S.D. Ga. June 6, 2016); *Ponsell v. Royal*, Case No. CV-514-042, 2015 WL 1223994 at *4 (S.D. Ga. Mar. 17, 2015); *Syrkin v. State Univ. of New York*, Case No. 04-CV-4336, 2005 WL 2387819, at *1 (E.D.N.Y. Sept. 29, 2005); *Gies v. Flack*, 495 F. Supp. 2d 854, 861 (S.D. Ohio 2007).

The undersigned agrees with the weight of authority that, while front pay is a permissible alternative remedy to reinstatement against a non-state employer, the Eleventh Amendment bars it against a state. While Ahmed relies on the prospective, equitable nature of front pay, "that label

10

is of no importance [and a] Court must look to the substance rather than the form of the relief requested to determine whether appellants' claims are barred by the Eleventh Amendment. *Blanciak.*, 77 F.3d at 698 (citing *Papasan v. Allain*, 478 U.S. 265, 279 (1986)). Here, the substance is not a state expenditure as an ancillary byproduct of complying with an injunction, but a direct state expenditure that is the "functional equivalent" of a damages award. *See Lane*, 772 F.3d at 1351; *cf. Edelman v. Jordan*, 415 U.S. 651, 668 (1974) (looking to the "practical effect" of an award of retroactive benefits and finding it "indistinguishable in many aspects from an award of damages against the State."). Therefore, Ahmed's claims for front pay in lieu of reinstatement are due to be dismissed.

**C. Ahmed's claims for monetary damages in Count Six against the University Officials in their official capacities are due to be dismissed.**

The University Officials request the Court dismiss Ahmed's official capacity claim for monetary damages in Count Six on the basis of § 14 immunity. Ahmed concedes this argument, stating the relief he has currently pled against the University Officials reflects his claims against them in their individual capacity only and that he will amend Count Six to "conform to the [official capacity] relief that he has properly pled against those particular defendants under Count Four of the Third Amended Complaint."[4] (Doc. 85 at 6). As it is currently constructed, however, Count Six includes only claims for monetary damages, and therefore it is due to be dismissed against the University Officials in their official capacities.

---

[4] As discussed above, the Court has dismissed portions of Ahmed's requested relief under Count Four. Therefore, any amendment Ahmed makes to Count Six must conform to the portions of Count Four that the Court has not dismissed.

## IV. Conclusion

The Board's motion, (doc. 77), is **GRANTED**, and Count Five of Ahmed's claim is **DISMISSED WITH PREJUDICE**. The University Officials' motion, (doc. 75), is also **GRANTED**, and Ahmed's claims in Counts Three and Four are **DISMISSED WITH PREJUDICE** to the extent they seek retrospective relief and front pay against the University Officials in their official capacities. Ahmed's official capacity claims against the University Officials in Count Six are also **DISMISSED WITH PREJUDICE**, as they seek only monetary relief.

DONE this 10th day of October, 2017.

**JOHN H. ENGLAND, III**
UNITED STATES MAGISTRATE JUDGE