FILED
2019 Mar-26 PM 04:44
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | |
|---|---|
| **DR. NESAR U. AHMED,** | ) |
| **Plaintiff,** | ) ) |
| v. | ) ) |
| | ) **CASE NO. 5:14-CV-01683-JHE** |
| **THE BOARD OF TRUSTEES OF ALABAMA A&M,** *et al.*, | ) ) ) |
| **Defendants.** | ) |

## UNIVERSITY PARTIES' REPLY IN RESPONSE TO PLAINTIFF'S BRIEF IN OPPOSITION TO <u>MOTION FOR SUMMARY JUDGMENT</u>

# **TABLE OF CONTENTS**

Table of Contents ..................................................................................................i

Introduction ..........................................................................................................1

Response to Plaintiff's Statement of Additional Disputed Facts ............................2

Argument..............................................................................................................4

    I.       The University Parties are Entitled to Summary Judgment on Plaintiff's Discrimination Claims..........................................................4

           A.      Plaintiff's Promotion Claims .......................................................4

           B.      Plaintiff's Payment Claims .........................................................8

    II.      The University Parties are Entitled to Summary Judgment on Plaintiff's Retaliation Claims .............................................................11

    III.     Drs. Hugine, Wims, and Glenn are Entitled to Qualified Immunity From Plaintiff's Individual-Capacity Section 1981 Claims................12

    IV.     The University Officials are Entitled to Summary Judgment on Plaintiff's Promissory Fraud Claim ..................................................13

Conclusion .........................................................................................................15

Certificate of Service .........................................................................................17

i

The University Parties[1] hereby submit this reply to Plaintiff's Brief in Opposition to Defendants' Motion for Summary Judgment (Doc. 117).

## INTRODUCTION

Plaintiff's response demonstrates all of the bases upon which the University Parties are entitled to summary judgment. Plaintiff's response fails to point to any record evidence suggesting that the University Parties made any employment decision based on race or national origin. Plaintiff also does not and cannot point to any record evidence suggesting that any University Party promised him summer assignments for the duration of his employment with the University, much less any evidence that any University Party made such a promise intending not to keep it. Instead of pointing to record evidence supporting his claims, Plaintiff continues to rely on his unsupported opinion that, in light of the University's history as an HBCU, it inherently discriminates in favor of African-Americans. Plaintiff's speculation cannot support his claims. The University Parties are entitled to summary judgment for at least the following four (4) reasons:

(1)  Plaintiff provides no evidence that any University Party made any employment decision on the basis of race or national origin;

(2)  Plaintiff's retaliation claim fails for the same reasons as his discrimination claims, as well as because he fails to allege that any retaliatory act took place in close temporal proximity to any protected activity;

---

[1] All defined terms used herein have the same meaning as in the Memorandum of Law in Support of the University Parties' Motion for Summary Judgment (Doc. 112-1).

1

(3) The University Officials are entitled to qualified, State, and State-agent immunity from Plaintiff's individual-capacity claims against them; and

(4) Plaintiff cannot establish the elements of his promissory fraud claim.

Accordingly, the Court should grant summary judgment to the University Parties on all of Plaintiff's claims against them.

### RESPONSE TO PLAINTIFF'S STATEMENT OF ADDITIONAL DISPUTED FACTS

4-5. These statements conflate the Supplemental Pay Claim and the Summer Assignment Claim, which Plaintiff separately alleged in the TAC. (TAC ¶¶ 32-39, alleging that, in January 2013, the University Parties denied his "request for supplemental pay for his work in organizing and conducting Fundamentals of Engineering two-hour review sessions for a PE license exam for Engineering Students;" TAC ¶¶ 40-43, alleging that, in March 2014, Plaintiff "received notice from the University that the upcoming summer (2014) would be the last summer that he would receive his summer salary"). Plaintiff's February 2013 EEOC charge encompassed the Supplemental Pay Claim, but it did not encompass the Summer Assignment Claim, which did not arise until more than a year after Plaintiff filed the EEOC charge.

13-16. Plaintiff's qualifications for the Coordinator Position were not "far superior" to Dr. Ayokanmbi's. Dr. Glenn testified that he concluded that Dr.

Ayokanmbi's qualifications exceeded Plaintiff's because "Dr. Ayokanmbi's graduate degrees are more in line to the subject matter in the program, and he taught courses in that program." (Doc. No. 113-4 at 7, lines 15:19-22).

17. The TAC does not allege that Plaintiff was more qualified for the Dean Position than Dr. Glenn. (TAC, ¶¶ 16-21, alleging that "[t]he selection of Dr. Egarievwe, an individual much less qualified than Plaintiff, for an interview was a violation of Plaintiff's rights").

18. Plaintiff was not more qualified than Dr. Glenn for the Dean Position. It is undisputed that Plaintiff did not meet the listed qualifications for the job, because he lacked administrative leadership experience as a departmental chair. (Doc. No. 113-1 at 45, lines 176:21-177:2; Doc. No. 113-5 at 4-5, ¶ 10).

19-25. The alleged statements to Plaintiff by members of the Search and Selection Committee are inadmissible hearsay. Moreover, those statements do not suggest that anyone on the Search and Selection Committee even mentioned race, ethnicity, or national origin. (Doc. No. 117, ¶¶ 19-25).

56-61. The June 2012 Salary Increase Letter refers to "a summer assignment," not to ongoing summer assignments for the duration of Plaintiff's employment with the University. (Doc. No. 113-2 at 93).

62. Plaintiff admitted that he does not know the enrollment in Gerald Vines's summer classes, nor does he know Vines's compensation arrangement with

3

the University. (Doc. No. 113-2 at 42, lines 155:11-23). Dr. Aaron Adams received a single summer assignment, for 2014. (Doc. No. 113-3 at 85, providing that Dr. Adams would receive "[a]n assignment during the 2014 summer session," and "[s]ubsequent summer assignments will be dependent upon course needs and your ability to generate external support"). Plaintiff also received a summer assignment in 2014. (Doc. No. 113-1 at 72, lines 282:14-21).

## ARGUMENT

### I. THE UNIVERSITY PARTIES ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S DISCRIMINATION CLAIMS.

#### A. PLAINTIFF'S PROMOTION CLAIMS.

Plaintiff claims discrimination with respect to his failure to obtain the Coordinator Position. He cannot, however, even demonstrate when or if that position was open. He admits he never applied for it. (TAC, ¶ 24). Plaintiff claims Dr. Glenn "awarded" the position to Dr. Ayokanmbi, but Dr. Glenn testified that Dr. Ayokanmbi already occupied the position when Dr. Glenn took over as Dean. (Doc. No. 113-4 at 5-6, lines 9:11-13:22). Thus, Plaintiff cannot demonstrate that he was "rejected" for the Coordinator Position. (Doc. No. 112 at 31-32).

Even if Plaintiff could establish that he was rejected for the Coordinator Position, he cannot demonstrate pretext. Plaintiff acknowledges the black-letter law that, "[g]enerally speaking, a plaintiff cannot prove pretext merely by arguing or showing that he was more qualified than the person who received the position."

4

(Doc. No. 117 at 27). He claims, however, that "he has established that the disparities between him and Ayokanmbi are so great that the evidence is sufficient for a reasonable person to find that Ayokanmbi would not have been chosen over Plaintiff." (Id.). Plaintiff cites no decision in which a court actually found that a plaintiff met this demanding standard. Indeed, in Springer v. Convergys Customer Mgmt. Grp., Inc., 509 F.3d 1344, 1349 (11th Cir. 2007) (cited in Doc. No. 117 at 27), the Court, after articulating this standard, indicated that the plaintiff ***did not*** meet it: "'Absent evidence that subjective hiring criteria were used as a mask for discrimination, the fact that an employer based a hiring or promotion decision on purely subjective criteria will rarely, if ever, prove pretext.'" Springer, 509 F.3d at 1349 (quoting Denney v. City of Albany, 247 F.3d 1172, 1185 (11th Cir. 2001)). Dr. Glenn testified that he believed Dr. Ayokanmbi was more qualified than Plaintiff because "Dr. Ayokanmbi's graduate degrees are more in line to the subject matter in the program, and he taught courses in that program." (Doc. No. 113-4 at 7, lines 15:19-22). Plaintiff possesses no evidence that this subjective criterion served as "a mask for discrimination," and he therefore cannot demonstrate pretext.

With respect to the Dean Position, Plaintiff admits that he does not know what occurred at the Search and Selection Committee meetings. (Doc. No. 117 at 29). Plaintiff does not dispute that the Search and Selection Committee included members from diverse backgrounds, including at least one Bangladeshi members,

5

two Indian members, one Chinese member, and one Iranian member. (Doc. No. 113-1 at 41, lines 157:2-160:16). Plaintiff relies on alleged statements to him by members of the Search and Selection Committee that their role "was to agree with Dean Walker and to go along with him in decision-making because he was carrying out the requirements of the Provost." (Doc. No. 117 at 30). As a preliminary matter, these statements are inadmissible hearsay and cannot defeat summary judgment. Pritchard v. Southern Co. Servs., 92 F.3d 1130, 1135 (11th Cir. 1996). Aside from that fact, they do not help Plaintiff. Plaintiff does not allege that Dr. Walker possessed any discriminatory animus or motive. He does not even allege that there was any discussion of race whatsoever during the Search and Selection Committee meetings. Thus, Plaintiff's hearsay statements in his declaration cannot defeat summary judgment.

Plaintiff's only other argument with respect to the Dean Position is that Dr. Montgomery told Plaintiff that Dr. Montgomery believed Plaintiff's experience, while it did not meet the listed job requirements, was "equivalent" to those requirements. (Doc. No. 117 at 27). Dr. Montgomery is a named defendant in this action. Plaintiff could have taken Dr. Montgomery's deposition, but voluntarily chose not to do so. In any event, even assuming it is true that Dr. Montgomery believed Plaintiff was qualified, Dr. Montgomery was not tasked with determining candidate qualifications, and it is undisputed that Plaintiff did not meet the listed job

requirements. (Doc. No. 113-5 at 4-5, ¶ 10; Doc. No. 112 at 32-33). Thus, Plaintiff was not qualified for the Dean Position and cannot make out a *prima facie* case of discrimination.

Even assuming he could make out a *prima facie* case, Plaintiff cannot demonstrate pretext. He claims that he possesses "direct evidence . . . of an ongoing edit requiring the preference of African-Americans over candidates of other races or national origin." (Doc. No. 117 at 32). Plaintiff claims he "has been a member of several screening committees while employed by the University," but he does not identify a single one of these alleged committees. (Id.). Plaintiff claims that, during his service on these unspecified committees, "he has been instructed by Daniel Wims, Provost, that the committee is charged with selecting an African-American for the position in favor of any other racial group." (Id.).[2] Aside from the fact that Plaintiff cannot identify when Dr. Wims allegedly made these statements, he admits he possesses no evidence that anyone made such statements in connection with the Dean Position. (Doc. No. 117 at 32-33). Instead, he claims that this alleged "preference in hiring . . . serves as *de facto* policy of the University, and in light of its ubiquitousness, should be considered to have been applied against Ahmed, and

---

[2] Plaintiff claims that "Defendants do not take issue with this statement and cite Dr. Wims' preference as fact in their brief." (Doc. No. 117 at 32). This is untrue. The University Parties stated as follows in their brief: "Even if this testimony were admissible, and Plaintiff could identify an occasion on which Dr. Wims allegedly made these purported comments, they have nothing to do with the promotions at issue here." (Doc. No. 112 at 35).

7

in favor of Glenn." (Doc. No. 117 at 33). In light of Plaintiff's failure to identify a single concrete instance of this allegedly "ubiquitous" policy, much less connect it to an employment decision involving him, the Court should decline this invitation.[3]

### B. PLAINTIFF'S PAYMENT CLAIMS.

In the TAC, Plaintiff alleged separate instances of discrimination based on the alleged denial of supplemental pay in January 2013 (TAC ¶ 48) and the alleged denial of summer assignments beyond the summer of 2014 in March 2014 (id.). In his brief, Plaintiff abandons the Supplemental Pay Claim. (Doc. No. 117 at 25-42, arguing that the University Parties discriminated against Plaintiff in connection with the Promotion Claims and the Summer Assignment Claim, but making no argument with respect to the Supplemental Pay Claim).

Plaintiff's only mention of the Supplemental Pay Claim in his opposition brief is an attempt to argue that the EEOC charge he filed in February 2013 in connection with the Supplemental Pay Claim somehow covers the March 2014 alleged denial of summer assignments. Plaintiff does not dispute that he received a summer

---

[3] These alleged statements certainly do not, as Plaintiff alleges (Doc. No. 117 at 32-33), qualify as direct evidence of discrimination. Direct evidence is evidence that, if believed, "'proves the existence of a fact without inference or presumption.'" Jones v. Gulf Coast Health Care of Delaware, LLC, 854 F.3d 1261, 1270 (11th Cir. 2017) (quoting Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1086 (11th Cir. 2004)). It "'reflects a discriminatory or retaliatory attitude correlating to the discrimination or retaliation complained of by the employee.'" Id. (quoting Wilson, 376 F.3d at 1086). Plaintiff cannot provide any evidence of any discriminatory statement "correlating to the discrimination or retaliation complained of by" Plaintiff.

assignment in the summer of 2013 (and the summer of 2014).  (Doc. No. 113-1 at 72, lines 282:14-21).  Plaintiff does not explain how an occurrence more than a year after the filing of the EEOC charge could possibly be encompassed within that charge.  Mere logic defeats this argument.  Without question, Plaintiff failed to file an EEOC charge with respect to his discrimination claim based on the Summer Assignment Claim, and the University Parties are entitled to summary judgment on that basis.  (Doc. No. 112 at 29).

Aside from Plaintiff's administrative failure, he failed to provide evidence supporting an inference of discrimination for his Summer Assignment Claim.  Plaintiff claims that the fact that he did not receive summer assignments after 2014 amounted to "a reduction in pay."  (Doc. No. 117 at 39).  Plaintiff does not dispute, however, that he received his full salary every year.  His complaint relates to the denial of additional pay for summer employment, which the Handbook clearly provides "is not expected to provide employment to all faculty members who desire to teach."  (Doc. No. 113-1 at 223).  The decision to follow University policy with respect to additional summer assignments (after providing "a summer assignment" as set forth in the June 2012 Salary Increase Letter) did not amount to an adverse employment action.

Even if the decision to follow University policy could be construed as an adverse employment action, Plaintiff cannot demonstrate that individuals outside his

9

protected class were treated differently. Plaintiff claims that "Gerald Vines, African-American engineering professor, was provided with summer teaching assignments during the years that Plaintiff was not." (Doc. No. 117 at 40). Plaintiff cites to no evidence other than his Declaration stating that he "personally observed" that Vines received summer teaching assignments. (Doc. No. 118-1, ¶ 67). Plaintiff admitted in his deposition that he did not know the enrollment in Vines's summer classes and does not know anything about Vines's compensation arrangement. (Doc. No. 113-2 at 42, lines 155:11-23). Thus, Plaintiff cannot demonstrate that Vines is "similarly situated in all relevant respects." Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1091 (11th Cir. 2004).

Plaintiff also claims that "Aaron Adams, African-American, engineering professor, was provided with a summer assignment by agreement." (Doc. No. 117 at 40). The document reflecting Dr. Adams's summer assignment, however, explicitly indicated that Dr. Adams would receive "[a]n assignment during the 2014 summer session," and "[s]ubsequent summer assignments will be dependent upon course needs and your ability to generate external support." (Doc. No. 113-3 at 85). Plaintiff also received a summer assignment during 2014. (Doc. No. 113-1 at 72, lines 282:14-21). He therefore cannot demonstrate that the University Parties treated him and Adams differently at all.

Plaintiff's argument regarding pretext fails for the same reason – the

University Parties provided legitimate, non-discriminatory reasons for their actions, and Plaintiff provided zero evidence that race or national origin played any role in the denial of summer assignments beyond 2014.[4]

## II.  THE UNIVERSITY PARTIES ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S RETALIATION CLAIMS.

In the TAC, Plaintiff asserted claims for retaliation based on the Coordinator Position Claim and the Summer Assignment Claim. (TAC, ¶¶ 54, 62). In his brief, he abandons his retaliation claim based on the Coordinator Position Claim. (Doc. No. 117 at 43-45 (arguing retaliation only in connection with the Summer Assignment Claim). The University Parties established in their opening brief that more than a year passed between Plaintiff's February 2013 EEOC charge and his claimed instance of retaliation (when Dr. Glenn informed him in March 2014 that the summer of 2014 would be his last summer assignment under the June 2012 Salary Increase Letter). (Doc No. 112 at 41-43). "[I]n the absence of other evidence tending to show causation, if there is a substantial delay between the protected expression and the adverse action, the complaint of retaliation fails as a matter of law." Thomas v. Cooper Lighting, Inc., 506 F.3d 1361, 1364 (11th Cir. 2007) (three-

---

[4] Plaintiff claims that an affidavit that counsel for the Board and Trustees submitted to the EEOC amounts to a "shifting reason" for the denial of summer assignments. (Doc. No. 117 at 42). The affidavit, however, indicated that a summer assignment *was* available for Plaintiff in 2015, but counsel failed to convey it to Plaintiff's counsel because his draft email unintentionally remained in his "outbox." (Doc. No. 118-5 at 1-4). This does not amount to "shifting reasons" for the denial of a summer assignment; in fact, it indicates that the University Parties were in fact prepared to offer Plaintiff a summer assignment in 2015.

month delay between complaints of sexual harassment and termination insufficient to show causal connection). The thirteen-month delay between the EEOC charge and the alleged retaliation is fatal to Plaintiff's claim.

In an attempt to save his claim, Plaintiff relies on an alleged incident that occurred ten (10) months *after* the alleged retaliation – an alleged statement by Dr. Glenn in January 2015 that he would not discuss a summer assignment in 2015 because of Plaintiff's pending lawsuit. (Doc. No. 117 at 44). According to Plaintiff, the March 2014 communication from Dr. Glenn that Plaintiff's summer 2014 assignment would be the last under the June 2012 Salary Increase Letter constituted retaliation. (TAC, ¶ 62). Thus, under Plaintiff's version of events, the University Parties already decided, as of March 2014, not to offer Plaintiff additional summer assignments under the June 2012 Salary Increase Letter. The alleged January 2015 statement is simply irrelevant to Plaintiff's retaliation claim.[5]

### III. DRS. HUGINE, WIMS, AND GLENN ARE ENTITLED TO QUALIFIED IMMUNITY FROM PLAINTIFF'S INDIVIDUAL-CAPACITY SECTION 1981 CLAIMS.

Plaintiff seeks to hold Drs. Hugine, Wims, and Glenn personally liable for discrimination and retaliation. The University Parties' opening brief established that

---

[5] Moreover, Plaintiff submits a declaration from the University's counsel indicating that the University was prepared to offer Plaintiff a summer assignment in 2015, but counsel inadvertently failed to convey the offer to Plaintiff's counsel. (Doc. No. 118-5). Thus, Plaintiff's own evidence demonstrates that, rather than exhibiting a retaliatory motive, Dr. Glenn was simply leaving communication regarding pending litigation to counsel.

12

Drs. Hugine, Wims, and Glenn were "motivated, at least in part, by lawful considerations." (Doc. No. 112 at 45-47). In arguing that they were not motivated by lawful considerations, Plaintiff relies on the same alleged evidence of discriminatory intent as he relies on to support his discrimination claims. (Doc. No. 117 at 45-47). The same arguments set forth above (supra Section I), establish that Drs. Hugine, Wims, and Glenn were motivated by lawful considerations. Qualified immunity therefore applies to Plaintiff's individual-capacity claims against them.

### IV.   THE UNIVERSITY OFFICIALS ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S PROMISSORY FRAUD CLAIM.

The University Officials established that the University performed its obligations with respect to the June 2012 Salary Increase Letter, because that letter at most promised Plaintiff one (1) summer assignment, which he received. (Doc. No. 112 at 54). Plaintiff argues that there was a promise that "was not kept" because the June 2012 Salary Increase Letter allegedly promised him a summer assignment every summer during his employment, notwithstanding University policy or the need for summer instruction in Plaintiff's department. (Doc. No. 117 at 49). Even if Plaintiff established an issue of fact on that point, he offers nothing more than speculation that the University Officials made the promise with no intention of keeping it. (Doc. No. 117 at 50). Dr. Glenn had no involvement in the June 2012 Salary Increase Letter. (TAC, ¶ 72). He therefore did not make any promise at all. (Id.). Moreover, Dr. Glenn denied Plaintiff future summer assignments on the basis

13

of budget. (Doc. No. 113-4 at 13-14, lines 41:22-42:9). Thus, Plaintiff fails to present any evidence that anyone made a promise with no intention of keeping it.

Plaintiff also cannot demonstrate reliance. Faced with the University Parties' argument that his deposition testimony negated reliance, Plaintiff now attempts to "clarify" that deposition testimony. (Doc. No. 117 at 21-22; Doc. No. 118-1, ¶¶ 74-79). Plaintiff still admits, however, that he relied on an alleged letter from Dr. Montgomery to Dr. Wims – and not any communication from any University Official to Plaintiff – in turning down the Abu Dhabi offer. (Doc. No. 117 at 21-22; Doc. No. 118-1, ¶¶ 74-79). He also admits that the letter from Dr. Montgomery to Dr. Wims did not mention summer assignments. (Doc. No. 117 at 21-22). Thus, Plaintiff cannot establish that he relied on any promise from any University Official in turning down the Abu Dhabi job offer.

Moreover, the University Officials are entitled to sovereign and State-agent immunity from the promissory fraud claim. Plaintiff claims that Barnhart v. Ingalls, -- So. 3d --, 2018 WL 6074918 (Ala. Nov. 21, 2018), does not apply because "Plaintiff has brought claims against the individuals in their individual capacities." (Doc. No. 117 at 50). But Barnhart also involved individual-capacity claims against state officials for actions they took in the course of their official duties. 2018 WL 6074918, at *9. In Barnhart, the Alabama Supreme Court held that the "nature of the claims" – making decisions relating to employee compensation – rendered the

14

individual-capacity claims "in effect" against the state. Id. Likewise, the University Officials here were acting solely in their capacities as University Officials, and not in their individual or personal capacities.

Plaintiff does not allege that the University Officials derived any personal or individual benefit from the June 2012 Salary Increase Letter. The fact that Plaintiff now understands that he is seeking damages from Dr. Montgomery personally is irrelevant; Barnhart makes clear that neither Dr. Montgomery nor any other University Official can be individually liable for acts done solely in their official capacities. Even if sovereign immunity did not apply, State-agent immunity would apply, because none of Plaintiff's scattershot allegations constitute evidence of willfulness, bad faith, or actions beyond the University Officials' authority.

## CONCLUSION

Based on the undisputed facts, arguments, and authorities contained herein, in the University Parties' Motion for Summary Judgment and Memorandum in Support, and in the University Parties Evidentiary Submission and Supplemental Evidentiary Submission, the University Parties respectfully request that this Court enter an Order granting their motion for summary judgment on Plaintiff's claims against them.

Respectfully submitted this 26th day of March, 2019.

*/s/ William R. Lunsford*
*One of the Attorneys for Drs. Hugine,*

15

      *Wims, Glenn and Montgomery*

William R. Lunsford
Matthew B. Reeves
**MAYNARD, COOPER & GALE, P.C.**
655 Gallatin Street
Huntsville, Alabama  35801
Telephone: (256) 551-0171
Facsimile: (256) 512-0119
blunsford@maynardcooper.com
mreeves@maynardcooper.com

and

Angela Redmond Debro
Office of General Counsel
**ALABAMA A&M UNIVERSITY**
Post Office Box 315
Normal, Alabama  35762
Telephone: (256) 372-8889
Facsimile: (256) 372-8890
angela.debro@aamu.edu

      */s/ L. Franklin Corley, IV*
      *One of the Attorneys for the Board*
      *and Trustees*

Roderic G. Steakley
L. Franklin Corley, IV
**SIROTE & PERMUTT, P.C.**
305 Church Street
Huntsville, Alabama 35801
Telephone: (256) 536-1711
Facsimile: (256) 518-3681
rsteakley@sirote.com
fcorley@sirote.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 26, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to:

John D. Saxon
Donna S. Cude
**JOHN D. SAXON, P.C.**
2119 3rd Avenue North
Birmingham, Alabama 35203
(205) 324-0223
(205) 323-1583 (facsimile)
jsaxon@saxonattorneys.com
dcude@saxonattorneys.com

*Attorneys for Plaintiff*

                                */s/ William R. Lunsford*
                                *Of Counsel*